**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GABRIEL TATARU, on behalf of himself and all others similarly situated, | ) ) ) | |
| | ) | No. 18-cv-06106 |
| Plaintiff, | ) ) | |
| | ) | Judge John J. Tharp, Jr. |
| v. | ) ) | |
| RGS FINANCIAL, | ) ) | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Gabriel Tataru has sued RGS Financial, a debt collector, because they sent him a dunning letter that identified his creditor, the First National Bank of Omaha, as "FNB Omaha II." He contends this was misleading and confusing, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. RGS says this suit should be dismissed for lack of subject matter jurisdiction because Mr. Tataru lacks standing, and alternatively that it is entitled to summary judgment because the letter did not violate the FDCPA. Before the Court are Tataru's motion for class certification and the parties' cross motions for summary judgment. For the reasons discussed below, Mr. Tataru's motion for class certification is granted provided he amends his retainer agreement. Further, the Court finds Tataru is entitled to summary judgment as to RGS's liability for violating the FDCPA by inaccurately naming the current creditor in its dunning letter.

**BACKGROUND**

Gabriel Tataru is an Illinois citizen who opened a credit card account with the First National Bank of Omaha (FNB Omaha) in 2012. DSMF ¶¶ 2-3, 6 (ECF No. 68). He later defaulted on that account, so FNB Omaha placed the debt with RGS, the defendant here, for collection. PSMF

¶¶ 7-8 (ECF No. 78). In 2018, RGS sent Tataru a dunning letter, which contained the following information in the top left corner:

| | |
|---|---|
| **CREDITOR:** | FNB OMAHA II<br><br>[xxxxxxxxxxx]9335 |
| **RGS ACCOUNT #:** | 0014631596 |
| **AMOUNT OWED:** | $739.51 |
| **LAST PAID DATE:** | 10/19/17 |

DSMF ¶ 19 (account number partially redacted). The letter also included identical information, though without the table formatting, in a separate part of the letter. DSMF ¶ 19-20. Seeing the creditor listed as "FNB Omaha II," instead of the creditor he was familiar with, FNB Omaha, Tataru was confused and thought that the letter might be a scam. PSMF ¶ 22. This lawsuit centers on whether the inclusion of the roman numeral "II" was an FDCPA violation. RGS explains that the "II" is a designation meant to inform RGS employees that this account has been placed for collection by the creditor twice. PSMF ¶ 18. The parties agree that there is no company known as "FNB Omaha II." PSMF ¶ 21.

Mr. Tataru filed this action on September 6, 2018, on behalf of himself and all others similarly situated on Sept 6 2018, alleging that RGS violated §§ 1692g(a)(2), 1692e and 1692e(10) by misidentifying the creditor in its dunning letter. On Nov. 11, 2018, the case was transferred to the assigned Magistrate Judge for discovery supervision, who set a discovery deadline of May 13, 2019. ECF No. 13, 16.. On April 26, 2019, RGS amended its answer. ECF No. 30. Mr. Tataru moved for class certification on May 13, 2019, the same day discovery closed. RGS moved for summary judgment in October 2019 (less than three months after briefing on the class certification

2

motion closed), prompting Mr. Tataru to include his own summary judgment motion with his response to the RGS motion.[1]

---

[1] The Court concludes that this sequence of events does not violate the one-way intervention doctrine.

> "The rule against one-way intervention prevents plaintiffs from moving for class certification after acquiring a favorable ruling on the merits of a claim. … The rule exists because it is unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one. If an individual plaintiff were to get a favorable ruling on the merits prior to certification—and its corresponding notice and opportunity to opt out—then class members are incentivized to remain in the lawsuit to take advantage of the favorable ruling. If an individual plaintiff got an unfavorable ruling on the merits prior to class certification, class members are incentivized to opt out of the class to avoid application of the unfavorable ruling. Allowing class members to decide whether or not to be bound by a judgment depending on whether it is favorable or unfavorable is "strikingly unfair" to the defendant. *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1207 (7th Cir.1971) (Stevens, J., dissenting).

*Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057–58 (7th Cir. 2016) (cleaned up). In *Costello*, the Seventh Circuit urged plaintiffs to exercise caution when seeking a ruling on the merits of an individual plaintiff's claim before a ruling has been obtained on class certification and notice provided to the class. *Id.* at 1058. The Court held, however, that the rule had not been implicated in that case because the plaintiffs had filed for partial summary judgment and class certification contemporaneously—but it would have been had the district court chosen to decide the summary judgment motion before the class certification motion. *Id.* Accordingly, the Court addresses the class certification motion first, albeit in the same opinion, as was the case in *Costello*. *Id.* at 1049 ("The district court disposed of the three motions in one order."). In addition, the Court concludes that, even if this sequence of events violated the rule against one-way intervention, RGS has forfeited any reliance on that rule, both by failing to raise it and by seeking a judgment on the merits before the Court had ruled on the class certification motion. *See, e.g., Oglesby v. Rotche*, 1994 WL 142867 (N.D. Ill. April 18, 1994) (holding that defendants can expressly or implicitly waive reliance on the one-way intervention doctrine by seeking a judgment on the merits prior to class certification and citing cases). Indeed, when the Court raised this issue with the parties on October 17, 2019, in a hearing held to set a briefing schedule on RGS's motion for summary judgment, RGS said it had no objection to a ruling on the merits of its motion to summary judgment before class certification was settled.

## DISCUSSION

### I.  Standing

The Court must first address RGS's contention that it does not have subject matter jurisdiction over this case because Mr.Tataru lacks standing to sue. RGS contends that Tataru did not suffer an "injury in fact" when he received a dunning letter that said he owed money to "FNB OMAHA II."

The Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. Const. Art. III, § 2. To satisfy this case-or-controversy requirement and bring suit in federal court, a plaintiff must establish that the defendant caused them to suffer an injury-in-fact that is redressable by the federal courts. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury-in-fact is the "invasion of a legally protected interest" that is actual, concrete, and particularized. *Id*. "Intangible injuries" can be sufficiently concrete to confer standing, and "Congress is well positioned to identify intangible harms that will give rise to concrete injuries." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016).

Section 1692g(a) of the FDCPA, which Mr. Tataru charges RGS violated here, requires that debt collectors make several disclosures to creditors in their initial communications with them. Among the required items of information are the identity of the creditor and the amount of the debt; it also requires that creditors be informed of their rights to dispute a debt. 15 U.S.C. § 1692g(a). Congress has authorized plaintiffs to sue "any debt collector who fails to comply with any provision" of the FDCPA, and provides for $1000 in statutory damages for plaintiffs who successfully enforce FDCPA liability. 15 U.S.C. § 1692k(a). Congress, however, is constrained by the Article III case or controversy requirement and cannot create a right to sue in people who have not suffered an injury-in-fact. Therefore, the mere fact that a defendant violated a provision of the FDCPA is not sufficient to confer standing; the statutory violation must give rise to an

Article III injury. *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017). Notably, a "bare procedural violation" of a statute "divorced from any concrete harm" is not enough to invoke this court's subject matter jurisdiction. *Spokeo*, 136 S. Ct. at 1549. Rather, the plaintiff must show that the statutory violation presented "an appreciable risk of harm" to the underlying concrete interest that Congress sought to protect. *Id.* at 1549-50.

RGS argues there is no case or controversy here because Mr. Tataru "has not asserted that RGS's conduct harmed Plaintiff or influenced his behavior in any way." Def.'s Mot. for Sum. J., ECF No. 67, at 10. Tataru responds that RGS's view of standing doctrine would require FDCPA plaintiffs to show actual damages, but precedent clearly allows for Congress to elevate intangible harms, without actual damages, to the status of legally cognizable injuries. Pl.'s Mot. for Sum. J., ECF No. 77, at 5-7. He further argues that misidentifying the creditor in a dunning letter presents "an appreciable risk of harm" to an important interest that Congress sought to protect in enacting the FDCPA. The Court agrees. Mr. Tataru has alleged that the dunning letter incorrectly naming the creditor caused him to suspect fraud; the violation he alleges entails an appreciable risk of harm to the interest Congress sought to protect: that targets of debt collection know how much they owe, and to whom.

In support of its argument that Taturu has suffered no concrete injury, RGS relies on *Casillas v. Madison Avenue Associates, Inc.*, where the plaintiff sued a debt collector for failing to disclose that, should she wish to dispute her debt, the dispute should be in writing. 926 F.3d 329, 332 (2019). Casillas did not allege that she sought to dispute the debt, in writing or otherwise, she "complained only that her notice was missing some information that she did not suggest that she would ever have used." *Id.* at 334. While Paula Casillas could point to a technical statutory violation, "the provisions of the Fair Debt Collection Practices Act that Madison violated do not

protect a consumer's interest in having an opportunity to review and respond to *substantive* information." *Id.* at 334 (emphasis in original). Although standing analysis does not turn on a distinction between procedural or substantive statutory provisions, *Larkin v. Finance System of Green Bay, Inc.*, 2020 WL 7334283 *3-4 (7th Cir. Dec. 14, 2020), Casillas alleged a "bare procedural violation"—a failure to disclose statutory rights that the plaintiff never intended to exercise. 929 F.3d at 334. Accordingly, the Seventh Circuit held that she had not suffered an injury-in-fact and did not have standing to sue. *Id.* at 331-32.

This case is distinguishable from *Casillas* in that Mr. Tataru, unlike Ms. Casillas, has alleged that the misnomer of the creditor caused him concrete harm. Tataru expressly claims that he was confused upon seeing that he owed money to "FNB Omaha II" and that he thought the letter might have been a scam. PSMF ¶ 22-23. Unlike *Casillas,* the omission of required information in this case caused actual confusion about the legitimacy of the collection notice and carried with it an appreciable risk of harm—namely, that the recipient would fail to exercise his rights because the letter was deemed to be a scam. These allegations suffice to fill the void that existed in *Casillas. See Lavallee v. Med-1 Solutinos, LLC*, 932 F.3d 1049, 1053 (7th Cir. 2019) ("In light of *Casillas*, an FDCPA plaintiff should include an allegation of concrete harm in his complaint."); *see also Larkin*, 2020 WL 7334283 *3-4 (holding that plaintiffs who claimed statements in dunning letter violated §§ 1692e 1692f lacked standing where neither complaint "contain[ed] *any* allegation of harm—or even an appreciable risk of harm—from the claimed statutory violation"); *Nettles v. Midland Funding LLC*, 2020 WL 7488610 (7th Cir. Jan. 4, 2021) (holding that the District Court lacked subject matter jurisdiction over §§ 1692e and 1692f challenge to letter that misstated the amount owed where plaintiff "[did] not allege that the statutory violations harmed her in any way or created any appreciable risk of harm to her.").

A failure to identify the correct creditor is not the kind of "bare procedural violation" that was insufficient to confer standing in *Casillas*. Disclosing the identity of the creditor goes to the heart of what Congress sought to protect in § 1692g(a) of the FDCPA. Mr. Tataru suffered an informational injury, the "withholding of information when a statute requires its publication." *Robertson v. Allied Solutions, LLC*, 902 F.3d 690, 693 (7th Cir. 2018). This injury satisfies the concreteness element because the failure to accurately identify the creditor "impaired [his] ability to use it for a substantive purpose that the statute envisioned." *Id.* Unlike a failure to disclose one element of the precise procedure for disputing debts, the significance of which may depend on a particular debtor's intention to dispute the debt, the risk posed by a failure to accurately disclose a creditor's identity does not turn on a particular debtor's plans to exercise statutory rights. All debtors need to know who how much they owe, and to whom, because they must decide to do *something* about the debt—whether to lodge a dispute, pay up, or retain a lawyer, among many other possibilities. Knowing the identity of the creditor, and whether that creditor in fact exists, is—like knowing how much one owes—"central to a consumer being able to intelligently respond to an effort to collect a debt." *Untershine v. Encore Receivable Management, Inc.*, 2019 WL 3766564 *3-4 (N.D. Ill 2019). Accordingly, the Court finds that Mr. Tataru has shown a concrete and particularized injury-in-fact and that he has standing to sue, and turns to his motion for class certification.

## II. Class Certification

Mr. Tataru seeks certification of a Rule 23 class action, defined as follows:

> (a) all individuals with Illinois addresses (b) who were sent a collection letter, by or on behalf of RGS, in the form represented by Exhibit A (c) to collect a consumer debt (d) that was sent from September 6, 207 to September 27, 2019 (e) that was not returned as undeliverable.

Pl.'s Mot. for Class Cert. 7, ECF No. 35.

7

### A. RGS's Forfeiture of the Purported Class Action Waiver

Before examining whether this class definition meets the strictures of Rule 23, the Court must address RGS's argument that Plaintiff waived the right to participate in class actions in his credit card agreement. RGS has attached a "Cardmember Agreement" to its response to the motion for class certification, purportedly the agreement governing Mr. Tataru's credit card account, which provides that "claims will not under any circumstances be pursued in Class Proceedings[.]" Ex. 1 to Def.'s Resp. to Pl.'s Mot. for Class Cert. 8, ECF No. 55-2. Mr. Tataru points out that RGS has asserted this waiver for the first time in its response to the class certification motion and that RGS has waived its opportunity to present a defense based on class action waiver.

The Court agrees that RGS's invocation of the class action waiver is untimely. The Federal Rules of Civil Procedure say that the time for asserting "any avoidance or affirmative defense," including release or waiver, is at the pleading stage. Fed. R. Civ. Proc. 8(c). Mr. Tataru argues that the defense has therefore been *waived*, but the relevant concept here is more likely *forfeiture*. *See Reed v. Columbia St. Mary's Hospital*, 915 F.3d 473, 478 (7th Cir. 2019) ("A defendant's failure to plead an affirmative defense may result in a waiver of the defense if the defendant has relinquished it knowingly and intelligently, or forfeiture if the defendant merely failed to preserve the defense by pleading it."). While RGS offers no explanation for why it waited until now to pull out this credit card agreement with its binding arbitration and class waiver provisions, the Court thinks this is more likely a case of forfeiture and will in any event give the benefit of the doubt to RGS in the absence of evidence that it intentionally sand-bagged Tataru. Whether to allow a defendant to raise an affirmative defense that has been forfeited is within the District Court's discretion. *Reed*, 915 F.3d at 478. Courts in this circuit "will generally find that the failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it." *Id.*

RGS has been on notice that he sought to sue on behalf of a class since the filing of Mr. Tataru's original complaint. On Sept 6 2018. Mr. Tataru filed this action with a caption naming himself "and all others similarly situated" as plaintiffs. Compl. at 1, ECF No. 1. The Complaint includes a section entitled "Class Allegations," and in paragraphs 27-34 Mr. Tataru declares his intention to sue on behalf of a class. RGS filed its first answer on Nov. 13, 2018, responding to Mr. Tataru's class allegations only to "den[y that] this action is appropriate for class certification." Answer ¶¶ 27-34, ECF No. 7. It did not mention the cardmember agreement in response to the class allegations, nor did it list "release" or "waiver" in avoidance or as one of their affirmative defenses. *Id.* at ¶¶ 37-46. Shortly afterwards, on Nov. 11, 2018, the case was transferred to the assigned Magistrate Judge for discovery, who set a discovery deadline of May 13, 2019. ECF No. 13, 16. The parties filed motions to compel production against each other. ECF No. 27, 32. On April 26, 2019, RGS amended its answer. ECF No. 30. Once again, it did not mention the credit card agreement or its class waiver and binding arbitration provisions.

RGS first raised the credit card agreement in its response to Plaintiff's Motion for Class Certification, over a month after the close of discovery. Def.'s Resp. to Pl.'s Mot. for Class Cert. at 2-3, ECF No. 55. In doing so, it did not attempt to argue that the arbitration provisions should apply, likely anticipating that the proposition would not be warmly greeted by the Court since RGS's active participation in the litigation was inconsistent with a desire to arbitrate. *See Smith v. GC Servs. Limited Partnership*, 907 F.3d 495, 499-500 (affirming the District Court's rejection of debt collector defendant's attempt to compel arbitration after the close of discovery, where defendant had not raised the arbitration clause in its answer). Instead, RGS attempts to squeak by with the class action waiver alone. In raising the class waiver for the first time in its opposition brief, RGS does not acknowledge that it should have raised this affirmative defense during the

pleading stage. It offers no explanation whatsoever for the delay, nor any argument as to why its lack of diligence warrants a favorable exercise of the Court's discretion. Having been provided no basis upon which to excuse the forfeiture, the Court finds none, and will not render Rule 8(c) a nullity by "countenance[ing] attempts to invoke such defenses at the eleventh hour, without excuse and without adequate notice the to the plaintiff." *Venters v. City of Delphi*, 123 F.3d 956, 969 (7th Cir. 1997).

Additionally, the Court finds that the plaintiff would be harmed by allowing defendant's waiver defense at this stage. Mr. Tataru points out that RGS "failed to provide any evidence that the alleged class waiver was actually provided to Plaintiff or was in effect at the time last used the credit card." Pl.'s Reply in Support of Mot. for Class Cert. at 3, ECF No. 61. Indeed, this and other issues could have been fleshed out during the seven months of discovery had RGS complied with Rule 8(c). "Pleadings shape the litigation, including the scope and cost of discovery." *Reed*, 915 F.3d at 479. This didn't happen because RGS didn't mention the cardmember agreement until after discovery had closed. In the absence of any argument by RGS as to why it should reopen discovery to address these issues, the Court sees no reason to put Mr. Tataru to the additional expense, burden, and delay that permitting additional discovery would entail.[2]

---

[2] Mr. Tataru also argues that, under the language of the agreement, RGS is not a "related party" that can invoke the agreement's protection. Even if the Court were to countenance RGS's belatedly raised defense, RGS has not shown that it can invoke the cardmember agreement. The agreement between RGS and FNB Omaha disclaims any agency relationship and makes clear that RGS is an independent contractor, stating that "No party to this Agreement shall have any authority to enter into any commitments binding upon the other." Ex. A (sealed) to Pl.'s Reply in Support of Mot. for Class Cert., ECF No. 60. Thus, RGS is not a party to the agreement between Mr. Tataru and FNB Omaha. *See also Spice v. Blatt, Hasenmiller, Liebsker & Moore LLC*, 2018 WL 525723 (N.D. Ill. 2018) ("A debt collector is not an employee, agent, or assignee of a creditor, but rather an independent contractor… [a]s such, there is no contractual relationship between the Plaintiff and the Defendant to arbitrate any dispute between the parties.").

### B.     Class Certification Criteria

On to the merits of Mr. Tataru's motion for class certification. To be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23. The Rule provides that a named plaintiff can sue on behalf of others only if certain prerequisites are met: 1) the class is so numerous that joinder of all putative class members is impracticable ("numerosity"); 2) there are questions of law or fact common to the putative class members ("commonality"); 3) the claims or defenses of the named plaintiff are typical of the claims or defenses of the putative class members ("typicality");and 4) the named plaintiff will fairly and adequately protect the interests of the class ("adequacy"). If these requirements are satisfied, a class may be certified, as relevant here, if 5) questions of law or fact common to the potential class members predominate over any questions affecting only individual putative class members ("predominance"); and 6) a class action is superior to other methods of adjudication ("superiority"). Fed. R. Civ. P. 23(a) and (b)(3). RGS argues that the proposed class does not meet the commonality, adequacy, predominance, or superiority requirements, but even as to requirements that are not disputed, district courts have an independent duty to ensure that all of the criteria for class certification have been met. *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003).

### 1.     Numerosity

The proposed class is sufficiently numerous. RGS states that the number of people who fall within the class definition is approximately 80. Ex. C to Pl.'s Reply in support of Mot. for Class Cert. at 2, ECF No. 61-3. The Seventh Circuit has stated that classes with as few as 40 plaintiffs satisfy the numerosity requirement. *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969). RGS does not point to any problem with the numerosity of this proposed class, and the Court can find none.

11

### 2.    Commonality

RGS contends that the proposed class does not fulfill the commonality requirement. Mr. Tataru bears the burden to show there are "questions of law and fact common to the class." *Rosario v. Livaditis*, 963 F.3d 1013, 1017 (7th Cir. 1992). "The fact that there is some factual variation among the class grievances will not defeat a class action." *Id.* Here, the question of fact common to the class involves the receipt of a dunning letter from RGS that identifies the current creditor as "FNB OMAHA II," and the question of law is whether RGS's identification of the creditor in that manner violated § 1692g(a)(2) of the FDCPA. This is enough to form the "common nucleus of operative fact" that Rule 23(a)(2) requires.

RGS argues that Mr. Tataru has not shown that the debt at issue is a consumer debt, citing a charge on his credit card to the livery company co-owned by Mr. Tataru. RGS's argument that other proposed class members' claims could raise similar issues, and thus there is no common question of law or fact, is not persuasive. Def.'s Resp. to Pl.'s Mot. for Class Cert at 6-7, ECF No. 55. The Seventh Circuit and other Courts in this district have addressed this same argument and rejected it time and again, as does this Court. If RGS were correct that the class should not be certified because some of the debts might be commercial rather than consumer debts, thus failing to satisfy a requirement inherent in every FDCPA claim, then it is difficult to imagine any FDCPA class being certified. *Lang v. Winston & Winston P.C.*, 2001 WL 641222 *2 (N.D. Ill. 2001) (rejecting this same argument). This would, to say the least, create some tension with 15 U.S.C. § 1692k(a)(2)(B), which clearly contemplates FDCPA suits filed as class actions. Should the consumer nature of class members' debts come into dispute, then identifying those deficient claims would not be so burdensome as to render the class mechanism impractical. *Hayes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 n.4 (7th Cir. 1974) (rejecting argument that possible

commercial nature of transactions defeated FDCPA class certification because "commercial purchases would frequently be readily identified" by the listing of a business as the purchaser).

Second, without citing authority in support of their position, RGS argues that the class should not be certified because an individualized inquiry into whether each class member actually received the letter will be required. The Court is satisfied that the class definition accounts for this possibility by excluding people to whom the letter was sent but returned undeliverable. What's more, in its response to an interrogatory that asked how many people fit this class definition, RGS said there were 80, so the Court assumes that some winnowing of possible plaintiffs who did not receive and read the letter has already occurred. Ex. C to Plt.'s Reply in Support of Class Cert. at 2, ECF No. 61-3. Furthermore, "the law presumes timely delivery of a properly addressed piece of mail." *Bobbitt v. The Freeman Cos.*, 268 F.3d 535, 538 (7th Cir. 2001).

### 3. Typicality

RGS does not challenge the typicality of Mr. Tataru's claims and, for essentially the same reasons discussed with respect to the commonality requirement, the court finds that Mr. Tataru's claims and defenses are typical of the class claims.

### 4. Adequacy

The only blow that lands is RGS's contention that the retainer agreement between Mr. Tataru and his counsel potentially sets up a conflict between Mr. Tataru and the proposed class. Rule 23(a)(4) requires that "the representative parties fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Court examines both whether Mr. Tataru would have any conflict with the class and "counsel's ability to fairly and adequately represent the interests of the class." *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 (7th Cir. 2013). The retainer agreement puts Mr. Tataru on the hook for attorney's fees if he accepts a settlement against the advice of his counsel. While the retainer agreement does not explicitly prohibit Mr. Tataru

from exercising his independent judgment, it is no secret that plaintiffs' attorneys' fees are often the big-ticket item in FDCPA cases. As such, the retainer agreement creates a potential conflict between Mr. Tataru and other potential members of the class—if a settlement would be in their interests but Plaintiff's counsel does not agree, Mr. Tataru might be deterred from rejecting the advice of his counsel lest he find himself liable for attorney's fees. Plaintiff's counsel, however, is willing to amend the retainer agreement, so this blow is not a knock out. *See In re Ocean Bank*, 2007 WL 1063042 (N.D. Ill. 2007) (permitting proposed class counsel to remedy objectionable retainer agreement and re-file for class certification); *see also Lanteri v. Credit Protection Assoc. L.P*, 2018 WL 4625657 (S.D. Ind. 2018) (same). Based on the representation of Plaintiff's counsel that there is no objection to an order striking the provisions relating to settlement against counsel's advice from the retainer agreement, the Court so orders. As such, RGS's objection to adequacy is overruled.[3]

### 5. Predominance

In addition to the requirements in Rule 23(a), class actions seeking damages must satisfy the Rule 23(b) requirement that common questions of law and fact predominate over individual issues. RGS makes a meritless argument that individual issues predominate because the Court will have to examine the state of mind of every class member who received the letter. In support, they cite to *Wahl v. Midland Credit Mgmt., Inc* for the proposition the "the state of mind of the reasonable debtor is *always* relevant." 556 F.3d 643, 646 (7th Cir. 2009). Had RGS continued reading the next sentence of that decision, they would have seen what the court meant: In FDCPA cases, plaintiffs must show that a debt collector's missive confused or misled the "unsophisticated

---

[3] Plaintiff's counsel is directed to file an amended retainer agreement consistent with this Order on or before January 15, 2021. The amended agreement may be filed under seal, but a copy must be provided to RGS.

consumer"—an objective standard. *See Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 811-12 (7th Cir. 2016). The Court will not have to probe every class member's state of mind because their subjective experience isn't ultimately relevant in determining whether there was an FDCPA violation. The common questions of law and fact here—whether the dunning letter sent to class members naming "FNB Omaha II" as creditor violated the FDCPA—predominate over any individualized questions.

RGS raises another concern: that the letter in question might not have been the first or only communication between RGS and a potential class member, so an individualized inquiry will be required to determine whether they were confused by this dunning letter. ECF No. 55 at 11. This concern is not consequential enough to diminish the centrality of the predominant legal question— whether the letter violated the FDCPA by failing to accurately identify the current creditor. At any rate, should such questions arise, they can be efficiently resolved in a class setting by RGS's records of contact with each class member. *See Fosnight v. Convergent Outsourcing*, 314 F.R.D. 299, 303 (S.D. Ind. 2018).

### 6.    Superiority

The Court finds that a class action lawsuit is the most efficient way to resolve this case. Defendant's objections are meritless. That class members will likely recover less than the $1000 in statutory damages provided for under § 1692k(a)(2)(A) is no obstacle to class certification. If it were, as Mr. Tataru points out, then it would make little sense for Congress to include § 1692k(a)(2)(B), which clearly contemplates class actions and provides for class damages "without regard to a minimum individual recovery," instead predicating the amount of class damages on the debt collector's net worth. Plaintiff's rough calculation of the recovery for each of the 80 potential class members, based on RGS's admissions of its net worth, shows that this is not a case of *de minimis* recovery such that possible plaintiffs would be better left to bring individual suits. ECF

No. 61 at 10. And even if the potential recovery were smaller, "a de minimis recovery (in monetary terms) should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344-45 (7th Cir. 1997).

In sum, the Court finds that Mr. Tataru's proposed class satisfies the requirements for certification set out in Rule 23 and grants Mr. Tataru's class certification motion.

## III.    Cross Motions for Summary Judgment

The Court now turns to the parties' cross motions for summary judgment as to liability. When ruling on a motion for summary judgment, the Court examines whether there is any genuine dispute as to any material fact such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(a). This standard remains unchanged when the parties both file motions for summary judgment; the Court "construes all inferences in favor of the party against whom the motion under consideration is made." *Cremation Soc'y of Illinois, Inc. v. Int'l Brotherhood of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2016).

At the outset, RGS argues that the FDCPA does not apply because Tataru has not shown that RGS's collection activity involved a "debt" within the meaning of the FDCPA. RGS contends that there is good reason to believe that the debt is commercial, because Mr. Tataru used his credit card to buy transportation services from a company he co-owns. Def.'s Mot. for Sum. J. 11-14, ECF No. 67. The FDCPA only applies to consumer debts, which it defines as those arising from a transaction "primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1692a(5). Mr Tataru stated in his deposition that he used his credit card to rent a bus from his own company for a family trip, demonstrating that this transaction was for a personal or family purpose.  RGS offers nothing to contradict this testimony other than the bare fact that the transaction in question

16

involved his own company. That Tataru bought services from a limousine company, even one he co-owns, says nothing about the purpose of the transaction, and there is nothing inherently noteworthy or suspect about a business owner purchasing services from his own business. Absent any evidence that Tataru used the transportation services for commercial, rather than personal, purposes, the Court has no basis upon to which to draw an inference in RGS's favor that the debt was commercial. RGS must come forward with evidence in some form to demonstrate that there is a genuine dispute as to this debt's consumer nature—its bare assertion that Mr. Tataru has not carried his burden is not enough to create a material fact dispute. On this record, the evidence supports only one conclusion: that this was a consumer debt. Accordingly, Mr. Tataru is entitled to summary judgment on this issue.

The FDCPA applies to this debt, so the remaining question is whether RGS violated any of its provisions. Section 1692g(a) requires debt collectors to provide specific information in their initial communications with debtors.[4] One of those required pieces of information is "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). A debt collector must "identify the current creditor clearly, without leaving the matter to guesswork." *Steffek v. Client Servs.*, 948 F.3d 761, 765 (7th Cir. 2020). "If a letter fails to disclose the required information clearly, it

---

[4] The parties' arguments about whether the creditor was adequately identified are based principally on the creditor identification requirement set forth in § 1692g(a)(2), though Tataru's motion also seeks summary judgment on § 1692e(10) as well. Having concluded that Tataru is entitled to summary judgment based on § 1692g(a)(2), the Court concludes that there is no need to consider whether summary judgment is appropriate under § 1692e. If summary judgment is not deemed warranted based on § 1692g(a)(2), it will not be warranted under § 1692e either, as the evidentiary showing under § 1692e is more demanding since it would require extrinsic proof of confusion that is not required to prove a violation of § 1692g(a)(2). *See Ruth v. Triumph Partnerships*, 577 F.3d 790, 800-801 (7th Cir. 2009) (explaining that in cases involving statements that are not plainly misleading or deceptive, "plaintiffs may prevail only by producing extrinsic evidence."); *see also Janetos*, 825 F.3d at 321 (addressing only plaintiff's § 1692e(a) claim where petitioner stated at oral argument that § 1692e claims based on the same letter added nothing to the 1692g(a) claim.)

violates the Act, without further proof of confusion." *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016).

Mr. Tataru argues that this case is simple: the FDCPA requires that debt collectors disclose the identity of the current creditor; RGS did not do so; RGS is therefore liable. The parties agree that the creditor at the time RGS sent its initial communication was the First National Bank of Omaha. PSMF ¶ 8. But that's not what the RGS collection notice said; the notice identified the creditor as "FNB OMAHA II." There is no dispute that this label identifies a creditor; RGS concedes that the use of the roman numeral "II" after "FNB OMAHA" has nothing to do with the identity of the creditor. RGS concedes that it added "II" after the creditor name for its own internal purposes—as a code to reflect that that this was a "second placement" of the debt with a collections agency. PSMF ¶ 17, ECF No. 78. That concession, Tataru argues, mandates judgment in his favor.

RGS maintains that it discharged its obligation under the FDCPA to identify the current creditor because debt collectors may use commonly used trade names of creditors in their initial communications with debtors. And indeed, the decisions on which RGS relies for that proposition show that courts interpret the 1692g(a)(2) requirement flexibly, and that debt collectors can, within reasonable bounds, use trade names, acronyms, or other commonly recognized names that accurately identify the current creditor. In *Stupiello v. Southwest Credit Sys., L.P.*, 2017 WL 5983815 *7 (S.D. Cal. 2017), for example, the court held that identifying "AT&T" as a creditor complied with § 1692g(a)(2), and rejected plaintiff's contention that "Pacific Bell Telephone Company, dba AT&T California" was required under the FDCPA. Similarly, in *Osideko v. LJ Ross Assocs.*, the debt collector identified the current creditor as "Wec (2134) (PEOPLES GAS & COKE COMPANY)." 2019 WL 1915666 at *2 (N.D. Ill. 2019). This identification complied with § 1692g(a)(2) and was plainly not misleading. The debt collector had provided the name of the

creditor, "Wec," the name of its parent company, "People's Gas and Coke Company," and the last four digits of the plaintiff's account number. The Federal Trade Commission's commentary on the FDCPA was persuasive to the Court: a debt collector "may use… [the creditor's] full business name, the name under which it usually transacts business, or a commonly-used acronym." *Id.* (*quoting* Federal Trade Commission, Statements of General Policy or Interpretation Staff Commentary on the FDCPA, 53 Fed. Reg. 50,097, 50,107) (Dec. 13, 1988)).

But this argument doesn't get RGS very far: it only persuades the Court that identifying the current creditor as "FNB Omaha" would have been enough to comply with § 1692g(a)(2). RGS doesn't explain why the Court should stop reading after "OMAHA" and ignore the "II," a designation RGS concedes is intelligible only to its employees. The addition of roman numerals is not obviously unrelated to "FNB OMAHA"; it might easily be understood to be part of the creditor's name, in the same manner as "Inc." or "LLC" or "Series 2006-2B." *See Rosales v. Weltman, Weinberg, & Reis Co., L.P.A.*, 2020 WL 6681362 at *1 (N.D. Ill. 2020). Neither the text of the statute nor any of the cases cited suggest that assorted letters and numbers may be added to the current creditor's name, particularly where they serve no purpose in identifying the current creditor. RGS cites no authority that says a debt collector can include information that has nothing to do with the creditor so long as the name of the creditor can be plucked out of the resulting string of characters. To the contrary, "[t]he mere presence of the correct name in the notice somewhere does not suffice." *Steffek*, 948 F.3d at 765.

RGS also contends that there was no FDCPA violation here because Mr. Tataru knew he was indebted to FNB Omaha and had a history of dealing with that bank. Mr. Tataru is thus like the unsophisticated consumer who has "a reasonable knowledge of her account's history." *Wahl*, 556 F.3d at 646. As Tataru observes, however, an unsophisticated consumer's recognition of a

creditor based on past dealings is irrelevant under § 1692g(a)(2). The statute does not require that debt collectors name the original creditor, nor any entity with which the consumer is necessarily familiar. The statute instead requires that the dunning letter disclose "the name of the creditor to whom the debt is owed"— *i.e.,* the current creditor. This creditor is often a company with which the consumer is unfamiliar, as debts are frequently bought and sold. Congress saw that many customers would not, in fact, be familiar with the creditor named in their dunning letter. Thus, § 1692g(a)(5) also tells debt collectors to include in their dunning letters "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." 15 U.S.C. 1692g(a)(5). The statute's focus on disclosure of the current creditor is also why the Court rejects RGS's argument that including Mr. Tataru's account number should be sufficient: "[L]isting an account number may help a consumer identify the origins of the debt in question (especially if it is an old account). The problem under § 1692a(g)(a)(2) is that an original account number… says nothing about who owns the debt today." *Steffek*, 948 F.3d at 766.

Neither can RGS point to the availability of a statutory verification process to excuse its failure to accurately name the current creditor. Were RGS correct about this, the statutory dispute process could be a shield against almost any charge of FDCPA liability—any failure to make the required disclosures under § 1692g(a) could conceivably be cured, eventually, through the dispute and verification process. The Court does not think that Congress intended to put the burden on consumers to use dispute procedures to gather information on their past due debts that should have been accurately disclosed in the initial dunning letter. Rather, it directed debt collectors to disclose certain substantive information about the debt in its letters, including the identity of the creditor.

The Seventh Circuit has also recognized that accurately identifying the current creditor enables the recipient of the letter to contact the current creditor "to verify that a payment would extinguish her obligation." *Janetos*, 825 F.3d at 317. Here, some guesswork might have eventually led the unsophisticated consumer to the conclusion that FNB Omaha was the creditor, enabling him to verify the debt, but suspicion of fraud is an equally valid reaction. The addition of unexplained characters and typos in business communications is a common indicator of fraud. And, as noted above, identifying the creditor as "FNB Omaha II" could easily suggest that the creditor is a different entity altogether—perhaps the Second National Bank of Omaha or some ot entity affiliated with, but distinct from "FNB Omaha." The bottom line is that RGS created a significant prospect of confusion regarding the identity of the current creditor because it included irrelevant information in the designation of the creditor's name. Tataru is hardly to blame for being confused by RGS's use of an internal code as part of the creditor's name.

This is not to say that RGS's use of an internal code was itself a violation of the FDCPA, just that the manner in which it appened that code to the creditor's name effectively undermined its compliance with the requirement to identify the current creditor in a nonconfusing fashion. The irrelevant internal designation "II" might not have caused such confusion if it was meaningfully separated from the substantive information required by § 1692g(a). But RGS printed it next to "FNB Omaha," separated by one space, and used the resulting misdesignation twice. The FDCPA relieves consumers of the burden to guess that RGS meant they were indebted to the "FNB Omaha" instead of "FNB Omaha II," and suspecting that a scam is afoot upon learning that there is no "First National Bank of Omaha Two" is just as reasonable as concluding that the actual creditor must actually be FNB Omaha. *See Janetos*, 825 F.3d at 321 (observing that recipients of dunning letter that did not clearly identify creditor were "left to guess who owned the debt"); *Steffek*, 948

21

F.3d at 765 (stating that a dunning letter must "identify the current creditor clearly, without leaving the matter to guesswork."). In short, the Court finds that, as in *Janetos* and *Steffek*, the undisputed facts show that the notice RGS sent to Mr. Tataru did not identify the creditor clearly and accurately; accordingly, Tataru is entitled to summary judgment as to liability under § 1692g(a)(2).

*     *     *

For the reasons set forth above, the Court grants the plaintiff's class certification motion and cross motion for summary judgment and denies the defendant's summary judgment motion.

Dated: January 4, 2021

John J. Tharp, Jr.
United States District Judge