**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GABRIEL TATARU, on behalf of )
himself and all others similarly situated, )
         )
               Plaintiff, )
    v. )
         )    Case No. 18-cv-6106
RGS FINANCIAL, Inc., )
         )    Hon. John J. Tharp, Jr.
         )
         )    Magistrate Judge Hon. Maria Valdez
              Defendant. )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER

Now comes Plaintiff, Gabriel Tataru, by and through counsel, and for his response in opposition to Defendant's Motion for reconsideration of the court's ruling on summary judgment and granting class certification. In support thereof, Plaintiffs state as follows:

## INTRODUCTION

This court granted Plaintiff's motion for class certification and motion for summary judgment on liability on January 4, 2021. (Dkt. # 96). Defendant filed a motion to reconsider, centered on its argument that Plaintiff did not have Article III standing because he was allegedly not "damaged" due to Defendant's violations of the FDCPA. (Dkt. # 100). Defendant additionally filed a Motion for Leave to File Interlocutory appeal with the Seventh Circuit, that was rejected. *See* (Dkt. # 106). Defendant seeks reconsideration of the court's order pursuant to Fed. R. Civ. P. 54(b), seeking to alter a non-final judgment. For the reasons that follow, Defendant's motion is without merit as this court already considered the relevant caselaw when finding that Plaintiff had Article III standing to pursue his case, and the recent Seventh Circuit

1

decisions on Article III standing do not change that analysis. Because there is no basis to overturn the January 4, 2021, decision, Plaintiff respectfully requests that this court deny Defendant's motion to reconsider.

## LEGAL STANDARD

Courts in this district have held that motions brought under Rule 54(b) are construed under the same standard applicable to motions under Rule 59(e). *Morningware, Inc. v. Hearthware Home Prods., Inc.*, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011). A motion to reconsider is appropriate "to direct the court's attention to manifest errors of fact or law, a significant change in the law or facts, the court's misunderstanding of a party's argument, or a party's contention that the court ruled on an issue that was not properly before it." *Janusz v. City of Chi.*, 78 F. Supp. 3d 782, 787 (N.D. Ill. 2015).

However, courts have held that this motion under Fed. R. Civ. P. 54(b) should not be used to "relitigat[e] arguments that the Court previously rejected or . . . argu[e] issues that could have been raised during the consideration of the motion presently under reconsideration." *Caine v. Burge*, 897 F. Supp. 2d 714, 717 (N.D. Ill. 2012) (citing *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996)). The Seventh Circuit has held that "a party moving for reconsideration bears a heavy burden… appropriate issues for reconsideration 'rarely arise and the motion to reconsider should be equally as rare,' Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990). (citations omitted).

## ARGUMENT

### 1.  This Court Already Considered And Rejected Defendant's Arguments

Defendant's motion to reconsider is meritless as it does not add anything to this litigation, but rather seeks to relitigate arguments that this court considered, and reasonably rejected.

Specifically, this court already reviewed the relevant caselaw regarding Article III standing, and the new Seventh Circuit precedents cited by Defendant do not materially change the analysis, because Plaintiff has shown that Defendant's violations of the FDCPA caused him actual harm by denying him important information about his debt. Additionally, Plaintiff has shown that Defendant's violations of the FDCPA created an appreciable risk of harm as well, since it provided false and material information to Plaintiff that would prevent him from being able to analyze his options on the debt. There is nothing in the recent Seventh Circuit caselaw that should change the court's reasoning in the January 4, 2021 order, and Defendant's motion should be rejected.

### A. <u>Plaintiff has shown sufficient harm for Article III standing</u>

Defendant specifically argues that Plaintiff has not shown sufficient injury to have Article III standing. In support, Defendant cites *Casillas* and a number of other recent cases dealing with Article III standing and the FDCPA. *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329 (7th Cir. 2019). Despite Defendant's arguments, it's apparent that under Seventh Circuit precedent, Plaintiff has Article III standing.

This court already considered *Casillas* at length in the January 4, 2021 opinion as well as *Larkin* and *Nettles* which Defendant also cites. *See Casillas v. Madison Avenue Associates, Inc.*; *Nettles v. Midland Funding LLC*, No. 19-3327, 2020 U.S. App. LEXIS 40012 (7th Cir. Dec. 21, 2020); *Larkin v. Finance System of Green Bay, Inc.*, No. 18-3582, 2020 U.S. App. LEXIS 39058 (7th Cir. Dec. 14, 2020). Specifically, this court compared the instant case with *Casillas*, *Larkin*, and *Nettles*, where the Seventh Circuit found that there was not a sufficient showing of harm to grant Article III standing.

In comparing the instant case to *Casillas*, *Larkin* and *Nettles*, this court noted that the

plaintiffs in those cases, unlike the Plaintiff in this case, not only failed to allege any specific harm but also failed to show "an appreciable risk of harm—**namely, that the recipient would fail to exercise his rights because the letter was deemed to be a scam.**" (emphasis added). The fact that, as the court noted, Plaintiff believed the letter was a scam is evidence that created an appreciable risk of harm. Tataru Opinion, Dkt. # 96, Pg. 6.

Plaintiff has shown an "injury in fact" because there is both injury caused by Defendant's FDCPA violations and an appreciable risk of harm here; the false statements caused him to believe the letter was a scam and denied him his right to know who the alleged creditor was. This false statement increased harm since he could not reasonably exercise his rights if he believed the letter was a scam.

This is simply logical; if a consumer receives a letter that he believes may be a scam, he is unlikely to investigate it further since he is unlikely to want to communicate with or provide additional information to a party he believes may be a criminal enterprise. Due to this inaction, the 30-day dispute and verification window could pass, leaving the consumer without the important verification rights that § 1692g was created to provided. **This is the exact type of harm that § 1692g(a)(2) was created to prevent**; a consumer being unable to determine who the debt was owed to and being unable to exercise their right to dispute and verify the debt. After all, if this were not deemed by congress to be necessary for a consumer to decide whether to seek verification, why include it at all as one of the few required pieces of information in § 1692g?

Defendant cites a portion of Plaintiff's testimony, stating "[i]n fact, after all the information he has received, Plaintiff no longer believed RGS's letter involved a scam. Pl's Depo. 28:11-13", (Defendant's Motion, Dkt. # 100, Pg. 12). However, rather than support Defendant's arguments, it actually undermines them. Plaintiff has not argued that the letter *was* a

scam, but rather that Defendant's false statement regarding the alleged creditor *made him believe the letter was a scam*. This shows not only confusion, but the fact that Plaintiff was deprived of extremely relevant information to the point that he believed an otherwise legitimate debt could be illegitimate. This caused Plaintiff, and the reasonable consumer, to avoid disputing the debt, since it is unlikely a reasonable consumer would further contact with what could be a criminal enterprise. This would have all been obviated if Defendant accurately named the creditor to whom the debt was owed.

### B. <u>Plaintiff Has Shown Evidence That He Suffered An Informational Injury</u>

Plaintiff has also properly alleged an informational injury, which is aligned with this court's recent decision in *Bryant v. Compass Grp. USA, Inc.,* 958 F.3d 617 (7th Cir. 2020). While *Bryant* deals with the Illinois Biometric Information Privacy Act, rather than the FDCPA, the issue with Article III standing is the same. In *Bryant*, the Seventh Circuit found that nondisclosure of certain information could be an Article III injury. This court also held, quoting *Robertson v. Allied Solutions*:

> **Article III's strictures are met not only when a plaintiff complains of being deprived of some benefit, but also when a plaintiff complains that she was deprived of a chance to obtain a benefit." [Robertson v. Allied Solutions, LLC , 902 F.3d 690, 697 (7th Cir. 2018)]. Accordingly, it was "immaterial" that Robertson did not plead what she would have done if she had been given the chance to respond. Id. It was sufficient that Robertson, unlike *Groshek*, was wholly deprived of the information necessary to respond in the way FCRA contemplated.**

> ***Bryant v. Compass Grp. USA, Inc.,* 958 F.3d 617, 624-625 (7th Cir. 2020)**

The name of a creditor to whom a debt is owed is the type of information that, if deprived, causes a concrete injury-in-fact. This is because like in *Bryant*, Plaintiff could not know what to do about the debt, since he did not even know what debt it could refer to. Based on Defendant's logic, it is unclear how a consumer would have standing when a debt collector

provides intentionally false information to them.

Additionally, Defendant's arguments that Plaintiff must show what specific actions he took to his detriment are not relevant here, since it's clear that Plaintiff's inability to understand who the alleged debt was owed to, and then-reasonable belief that the letter was a scam, makes it obvious that there is little he could do. Here, Defendant's inability to dispute *was* the detriment and injury caused by Defendant's false statements. Unlike in *Nettles*, where the balance was allegedly inaccurate, Mr. Tataru did not even know what account the alleged debt referred to, who the debt was allegedly owed to, or whether the collector was even legitimate. Thus, Plaintiff's inaction is clearly a direct result of Defendant's false statements in its communications to Plaintiff, since he didn't have sufficient information to take further action.

By providing the false name of the creditor to the point where Plaintiff believed it was a scam, it essentially made the other rights impossible to exercise, since no rational consumer would provide information to someone that he believed was attempting to scam him. A consumer being unable to determine what debt or account a collector is seeking is the specific risk that congress sought to eliminate with § 1692g(a)(2), and that Defendant violated here.

 As this court noted, citing *Untershine*, "All debtors need to know who how much they owe, and to whom, because they must decide to do ***something*** about the debt—whether to lodge a dispute, pay up, or retain a lawyer, among many other possibilities. Knowing the identity of the creditor, and whether that creditor in fact exists, is—like knowing how much one owes—"central to a consumer being able to intelligently respond to an effort to collect a debt." *Untershine v. Encore Receivable Management, Inc.*, 2019 WL 3766564 *3-4 (N.D. Ill 2019). (emphasis in original). Tataru Opinion, Dkt. # 96, Pg. 7.

Thus, Plaintiff has shown an informational injury caused by Defendant's false statements

that kept him from taking further action on the debt.

### 2.   <u>The Recent Seventh Circuit Caselaw Does Not Alter The Result Here</u>

Defendant argues that several recent Seventh Circuit's, specifically *Brunett* and *Gunn* hold that "confusion" is not a sufficient injury for Article III standing and claims that this dooms Plaintiff's claim. *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, No. 19-3514, 2020 U.S. App. LEXIS 39267 (7th Cir. Dec. 15, 2020); *Brunett v. Convergent Outsourcing, Inc.*, No. 19-3256, 2020 U.S. App. LEXIS 39270 (7th Cir. Dec. 15, 2020). While Defendant is correct that the Seventh Circuit has held that "confusion" by itself isn't sufficient for Article III standing, this does not affect Plaintiff's claim. Additionally, Defendant attempts to use the fact that Plaintiff alleged, among other things, confusion, to attack his claim. Rather, the fact that Plaintiff was confused as to the identity of his creditor is additional proof of the informational injury and risk of harm indicating Article III standing.

Defendant mischaracterizes Plaintiff's argument regarding harm related to his confusion. Specifically, it is not only the confusion that creates the Article III injury, but rather the "appreciable risk of harm" created by Defendant's false statements is the Article III injury, along with Plaintiff being deprived of important and material information. Plaintiff concedes, and it is obvious, that a consumer simply being confused by something incredibly benign would not automatically create Article III standing, but the inverse is not also true- being confused cannot serve to bar a consumer's claim when it is accompanied by an appreciable harm. This court recognized that the type of harm here- Defendant's inclusion of a false name of the current creditor, is the exact type of harm § 1692g(a)(2) was created to prevent and Plaintiff's confusion and belief the letter was a scam was additional evidence that the misinformation was not benign.

Here, the "appreciable risk of harm" is obvious- Plaintiff was given false and confusing

information as to who the alleged debt was owed to, and there was no way for him to determine, other than contacting the collector, to determine who he allegedly owed money to. Plaintiff's belief that the collection letter "was a scam" is additional evidence that he would not contact the collector to verify.

In other words, Defendant's false communications deprived Plaintiff of the ability to dispute the debt, because Plaintiff reasonably did not know whether the collector was even legitimate. The Seventh Circuit held in *Casillas* that "'Article III's strictures are met not only when a plaintiff complains of being deprived of some benefit, but also when a plaintiff complains that she was deprived of a chance to obtain a benefit.'..." *Casillas v. Madison Ave. Assocs., Inc.,* 926 F.3d 329, 334 (7th Cir. 2019), citing *Robertson v. Allied Solutions, LLC*, 902 F.3d 690, 697 (7th Cir. 2018).

Defendant's reliance on *Brunett* for its claims that "the state of confusion is not itself an injury" for purposes of the Article III standing analysis is fundamentally misplaced here. Plaintiff is not simply claiming that he was confused, but that he was deprived of significant and important information and that his confusion as to whom the collector claimed the debt was owed is proof that the false naming of the creditor was material.

In *Brunett*, the Plaintiff argued that a letter stating that debt forgiveness over $600 could be reported to the IRS. The Seventh Circuit held that because Plaintiff's debt would have been over this amount regardless, there was no injury because she could not be affected, regardless of whether the statement was false. That is not the case here, where Plaintiff, like any consumer, needs to know what is probably the most important aspect about an alleged debt; who the alleged creditor is. Without knowing who the alleged creditor is, it is difficult to even begin to dispute the debt, as it would be unclear whether the debt has any validity or whether the collector is

legitimate.

Defendant's filing of a supplemental brief discussing *Smith v. GC Serv. L.P.*, 19-3494, 2021 U.S. App. LEXIS 1365, (7th Cir., Jan. 21, 2021), is also unpersuasive. (Dkt. # 102). In *Smith*, this court found that "Smith did not allege injury, because she did not try to show what good a dispute would have done her." *Id.* at *6. In the instant case, Plaintiff has shown that Defendant's inclusion of a false name for the current creditor caused him to be unable to recognize what the alleged debt was, and whether the collector was even legitimate, completely prevented him from reasonably exercising his statutory rights.

Defendant's citation of *Spuhler* is also misplaced. Defendant argues that "the FDCPA envisions that debtors will use accurate, non-misleading information in choosing how to respond to collection attempts and how to manage and repay their debts". (Defendant's Motion, Dkt. # 100, Pg. 9). However, this is not the case here, where Defendant provided a false name of a creditor to Plaintiff. The fact that Plaintiff believed the letter was a scam is evidence of the increased risk of how he would manage the alleged debt.

Defendant cites *Matthias v. Tate & Kirlin* for its argument that confusion as to the name of the creditor to whom the debt is owed is not sufficient to confer Article III standing to sue. *Matthias v. Tate and Kirlin Assoc.*, No. 19-cv-182-slc, 2021 U.S. Dist. LEXIS 5191 (W.D. Wis. January 11, 2021). However, this also is no dispositive here. First, this was a District court case and is not controlling. Second, and more importantly, this case is distinguishable to the case here since in *Matthias*, the letter was merely confusing as to whom the creditor was but in the instant case, the information provided to Plaintiff was actually and demonstrably **false**. There are also no allegations in *Matthias* that the consumer believed the letter was a scam or that the debt collector was entirely illegitimate, that in this case, would prevent the consumer from seeking additional

clarification.

In short, while the Seventh Circuit has undoubtedly issued a number of opinions on Article III standing in regard to the FDCPA, the opinions simply explain, not expand, the holding of *Casillas* and *Spokeo*. This court has already analyzed the harm present to Plaintiff and members of the class under the factors described in in *Casillas* and held that Article III standing does in fact exist. The recent opinions do not change this, and Plaintiff respectfully submits that it would be in error for this court to reverse its decision. As a result, Defendant's Motion for Reconsideration should be denied.

## CONCLUSION

Defendant's motion to reconsider seeks to re-litigate a central holding of the January 4, 2021 opinion, fails to show how recent precedent materially affect the decision, and fail the high bar that Fed. R. Civ. P 54(b) require. As a result, Defendant's motion is without merit and should be denied.

Respectfully submitted,

*Bryan Paul Thompson*
One of Plaintiff Attorneys

Bryan Paul Thompson
Robert W. Harrer
Chicago Consumer Law Center, P.C.
33 N. Dearborn St. Suite 400
Chicago, Illinois 60602
Tel. 312-858-3239
Fax 312-610-5646
bryan.thompson@cclc-law.com
rob.harrer@cclc-law.com

## <u>CERTIFICATE OF SERVICE</u>

I, Bryan Paul Thompson, an attorney, hereby certify that on Friday, February 26, 2021, I caused a true and accurate copy of the foregoing document to be filed via the court's CM/ECF electronic filing system, which sent notice via email to all counsel of record in the above captioned case.

Respectfully Submitted,

By: *Bryan Paul Thompson*