IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GABRIEL TATARU, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) No. 18-cv-6106 ) |
| v. | ) Judge John J. Tharp, Jr. ) ) |
| RGS FINANCIAL, Inc., | ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Gabriel Tataru sued RGS, a debt collector, because it sent him a dunning letter that incorrectly identified his creditor. The Court granted Mr. Tataru's motion for summary judgment and certified a class of similarly situated plaintiffs on January 4, 2021. Prompted by a recent cascade of decisions from the Seventh Circuit that address the standing requirements for FDCPA plaintiffs, Defendant RGS has moved for reconsideration of that order. For the reasons discussed below, the Court grants the motion for reconsideration, grants summary judgment for the defendants because Tataru lacks standing, and vacates the class certification order.

## BACKGROUND

Tataru claims that RGS violated 15 U.S.C. § 1692g(a), which requires that debt collectors disclose, among other things, the identity of the creditor to whom a debt is owed. The dunning letter RGS sent to Tataru identified his creditor as "FNB Omaha II," and entity that does not exist, instead of his actual creditor, the First National Bank of Omaha. As a result, Tataru suspected that the letter might be from a scammer. Pl.'s Statement of Material Facts (PSMF) ¶ 22, ECF No. 78. RGS explained that the roman numerals after the bank's name were an internal designation meant to communicate that the debt had been placed for collection with RGS twice. PSMF ¶ 17. RGS

has challenged Tataru's standing from the beginning, initially basing its argument that Tataru had not suffered a concrete injury on the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016), and the Seventh Circuit's decision in *Casillas v. Madison Avenue Associates*, 926 F.3d 329, 332 (2019). Because Tataru had testified in his deposition that he suspected fraud upon receiving the letter incorrectly naming his creditor, and because the letter failing to disclose the correct creditor posed a threat to Tataru's ability to use that information for the substantive purpose envisioned by the statute—addressing his debt—the Court originally concluded that Tataru had standing to sue. In other words, in the Court's view, Tataru had suffered an informational injury of the sort that the Supreme Court has recognized in several decisions, including *Spokeo*. 136 S. Ct. at 1549 ("An information injury occurs when the defendant refuses to provide the plaintiff with information that a law… entitles him to obtain and review for some substantive purpose… [i]n such cases, a plaintiff need not allege any *additional* harm beyond his failure to receive information that the law renders subject to disclosure.") (cleaned up) (emphasis in original); *see also Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 835 (7th Cir. 2019) (gathering authority about informational injuries). The Court further found that RGS had violated 15 U.S.C. § 1692g(a)(1), granted summary judgment to Tataru, and certified a class of similarly situated individuals who had received letters with misnamed creditors.

In the weeks shortly before and after the Court's ruling on the cross-motions for summary judgment, the Seventh Circuit released a flurry of decisions holding that debtors claiming an FDCPA violation must show that the statutory violation, such as a failure to make a required disclosure, caused them to take a detrimental step resulting in a mishandling of their debt. Here, Mr. Tataru has adduced evidence that the letter caused him to be confused about the legitimacy of the dunning letter but adduced none that his confusion prompted him to take any action to his

detriment. Having reconsidered its earlier holding in light of the Seventh Circuit's recent holdings, the Court now concludes that, in the absence of any evidence that Mr. Tataru suffered a concrete injury as a result of the dunning letter at issue in this case, the Seventh Circuit's teaching requires a finding that Mr. Tataru lacks standing to press his claim that the letter violated the FDCPA.

## DISCUSSION

A motion to reconsider is appropriate in the rare situations where there is "a controlling or significant change in the law or facts since the submissions of the issues to the court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). The Seventh Circuit's series of eight standing decisions, narrowing the circumstances in which FDCPA plaintiffs have standing to sue, establishes that this is one of those rare situations. *See Larkin v. Finance System of Green Bay, Inc*, 982 F.3d 1060, 1066 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020); *Bazile v. Finance System of Green Bay, Inc.*, 983 F.3d 274, 280 (7th Cir. 2020); *Nettles v. Midland Funding, LLC*, 983 F.3d 896, 900 (7th Cir. 2020); *Spuhler v. State Collection Servs., Inc.*, 983 F.3d 282, 286 (7th Cir. 2020); *Smith v. GC Services Limited Partnership,* 986 F.3d 708 (7th Cir. 2021); *Pennell v. Global Trust Management, LLC*, 2021 WL 925494 (7th Cir. 2021); *see also Patterson v. Howe*, 2021 WL 1124610 *1-3 (S.D. Ind. 2021) (surveying these recent cases and granting a motion to reconsider in light of them).

Standing doctrine arises from Article III of the Constitution, which entrusts federal courts with the adjudication of "cases" and "controversies." U.S. Const., Art. III § 2. The doctrine requires that a plaintiff demonstrate an "injury in fact" that is traceable to the defendant's conduct and that can be redressed by a judicial decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). The Supreme Court's decision in *Spokeo* and its Seventh Circuit progeny concern the injury-in-fact requirement, the element at issue in this case. An injury in fact is the invasion of a legally

protected interest that is "concrete and particularized." *Spokeo*, 136 S.Ct. at 1548. Concrete injuries need not be tangible; Congress can "elevate" intangible harms and make them legally cognizable; but plaintiffs cannot merely point to a "bare procedural violation, divorced from any concrete harm." *Id.* This most recent line of precedents makes clear that an FDCPA plaintiff must show that the statutory violation caused them to take some detrimental step and mishandle their debt. *See, e.g., Spuhler*, 983 F.3d at 286. A survey of several of these cases will suffice to illustrate the Seventh Circuit's view of the injury-in-fact requirement for Article III standing.

In *Spuhler*, the Seventh Circuit reviewed a grant of summary judgment for the FDCPA plaintiffs on their claim that the debt collector's dunning letter failed to include a statement that interest was accruing on their debts. *Id.* at 284. Holding that the plaintiffs had not established their standing to sue, the Seventh Circuit explained that, at the summary judgment stage, a plaintiff must set forth "specific facts" that support each element of standing. *Id.* at 286. The Court rejected the plaintiff's contention that the statutory violation was enough to establish a concrete injury, saying that "[t]he failure to provide information that is required under the FDCPA inflicts a concrete injury only if it impairs a plaintiff's ability to use the withheld information for a substantive purpose that the statute envisioned." *Id.* Such impairment results if the debtor takes some misstep with respect to her debt. *Id.* The Seventh Circuit observed that there was no evidence that the statement about accrual of interest caused the Spuhlers to pay "a different, lower-interest-rate debt thinking that the debts mentioned in the letter would not accrue interest at all. Nor did they present evidence that they took action to clarify any confusion over whether the debts were accruing interest. In fact, one of the plaintiffs stated that he could not recall ever seeing the letter and "gave no indication that the allegedly missing information from the letters affected his response to [the letters] or his debts." *Id.*

4

In *Brunett*, the plaintiff received a dunning letter in which the debt collector offered to forgive half of a $1000 debt, and further stated that if she were forgiven more than $600, they would be required to report that to the IRS. *Brunett*, 982 F.3d at 1067-68. Brunett argued that this violated § 1692e(5) of the FDCPA because it threatened action that cannot legally be taken. Without reaching the merits of that question, the Court decided that Brunett did not have standing. Brunett asserted that she was confused by the letter, but the court noted that she "did not pay something that she does not owe… [t]he statement about the possibility of a report to the IRS did not affect her credit rating or discourage anyone from doing business with her." *Id.* at 1068. Confusion alone does not confer standing unless a debtor "acts, to her detriment, on that confusion[.]" *Id.*

Similarly, in *Smith*, the plaintiff claimed that a debt collector violated § 1692g(a)(3) by imposing an "in writing" requirement on the debtor's right to dispute a debt. *Smith*, 986 F.3d at 709. Smith said she was confused by the letter, but because she did not argue "that the letter's supposed lack of clarity led her to take any detrimental step, such as paying money she did not owe[,]" she lacked standing to sue. *Id.* at 710-11. And in *Pennell*, the plaintiff had retained counsel who asked the debt collector to stop communicating with his client. 990 F.3d at 1043. Nonetheless, Pennell received another dunning letter from the collector, prompting her counsel to send another letter disputing the debt and again requesting that the collector cease communications with the client. *Id.* Pennell said that the collector's letter to her violated § 1692c(a)(2) of the FDCPA, which prohibits debt collectors from communicating directly with consumers who are represented by counsel. *Id.* The errant letter, said Pennell, made her think that her lawyer's demand to cease communication "had been futile," made her question whether she understood her rights under the FDCPA, and to doubt whether her lawyer was still representing her. *Id*. But Pennell's stress and

confusion flowing from the statutory violation did not amount to a concrete injury because the dunning letter did not "le[a]d her to change her course of action or put her in harm's way." *Id*. at 1045. Because her stress and confusion did not lead her to take some detrimental step, she lacked standing to sue.

As in those cases, so here: Tataru did not adduce evidence that he mishandled his debt because he received a dunning letter that appended meaningless characters to his creditor's name in violation of the FDCPA. The only evidence adduced of any injury was that the letter identifying his creditor as the non-existent "FNB Omaha II" caused Tataru to suspect fraud. PSMF ¶ 22, ECF No. 78. The Court originally understood standing doctrine to recognize statutory violations that pose a threat to interests Congress sought to protect as concrete harms. In this case, the court understood that debtors have an interest in accurate information as to the identity of their creditor, implicit in the statutory requirement that debtors must disclose the identity of the current creditor. Accordingly, the Court found that Tataru had suffered an informational injury. Opinion and Order 7, ECF No. 96.

The Seventh Circuit's recent decisions have since made crystal clear that the state of confusion is not itself an injury. *Brunett*, 982 F.3d at 106. For standing, therefore, Tataru needed to do more than demonstrate a threat that he would fail to exercise his rights because he deemed the letter a scam—he must have actually failed to exercise those rights and suffered some tangible adverse consequence as a result. For example, Tataru could have suffered a concrete injury if, because he suspected the letter was from a scammer, he delayed taking action on the debt and was then charged more interest as a result. Under the Seventh Circuit's recent guidance, Tataru's fear of fraud, like Smith's confusion about dispute processes, or Pennell's stress after receiving a letter

6

that should have been sent to her lawyer, is not an injury sufficient to confer standing under Article III. *Smith*, 986 F.3d at 710-11; *Pennell*, 990 F.3d at 1043.

            \*   \*   \*

Because Mr. Tataru failed to demonstrate that he suffered a concrete injury, the Court grants RGS's motion for summary judgment. And because the Court lacks subject matter jurisdiction, the certification of the putative class is vacated, and judgment is entered for the Defendant as to Tataru only. The claims of putative class members are dismissed without prejudice.

Dated: April 26, 2021                  John J. Tharp, Jr.
                                  United States District Judge